His Honor, JOHN ST. PAUL,
rendered the opinion and decree of the Court, as follows:
'¡Defendant owned a large tract of land fronting on Moss Street, in the square bounded on the sides by Bell and Desoto Streets, and. in the rear of Hagan Avenue, upon which stood a single cottage facing Moss Street.
He offered, through .a broker, to sell plaintiff 60 feet front of said land nearest Bell Street, which plaintiff re-' fused to buy because it did not include said cottage.
Thereafter plaintiff, in ¡a writing prepared by the same broker (evidently a continuation of the first negotiations) offered $4,300 for “the single cottage property situated at 1218 Moss Street,” having 90 feet front, to be taken nearest Bell Street, by a depth of 131 feet on the. Bell Street side “and a depth on DeSoto Street to fence in rear running from Bell Street, being first fence from Moss Street.” Which offer defendant ¡accepted personally. . .
*58 It now appears that the aforesaid “fence in the rear” measures actually 60 feet, but its exact length was not known at the time.
Hence this controversy; plaintiff insisting on getting 90 feet in the rear as well as in front, and defendant insisting that he shall take only 60 feet in the rear, that is, the actual measurement of the aforesaid ‘ ‘ fence in the rear. ’ ’
A great deal of parol testimony was heard in the case; but, as often happens in such1 matters, it tends only to show the understanding of one side or the other, but not He mutual understanding, i e., the understanding of both parties.
Por, on the one hand, it is not claimed that defendant, who closed the contract personally, ever personally entered into any other agreement, or made or authoritzed any other representatives, than what is contained in the written document aforementioned; and the fact that he at once denied any obligation on his part to deliver anything beyond the limit of the aforesaid fence in the rear (except as a compromise, with which we are not concerned) , and that to 'deliver 90 feet in the rear as claimed by plaintiff, would, on account of the irregular shape of the original tract, largely diminish the value of that which remains to him, are fairly determinative that he (defendant) never intended to sell full ninety feet in the rear. ■ ■
On the other hand, it is shown by the evidence, and borne out by the written instrument itself, that plaintiff intended to purchase not a lot measuring 90 feet front, but a single cottage standing on such a lot; and the physical situation is such that if the said line of said lot be drawn from the uttermost point of the 90 foot front *59 line to the uttermost point of the 60 foot front rear fence it will intersect the aforesaid single cottage from front to rear in such manner as to leave at least two feet thereof still standing on that part of the property still left to the defendant; all of which is equally determinative that plaintiff never intended to purchase a lot having oniy sixty feet in the rear.
Opinion and decree, January 3rd, 1916.
Rehearing refused, January 17th, 1916.
Writ granted, February 23, 1916.
It is quite unnecessary to proceed further, there was no mutual understanding between the parties, and hence no contract; and since there was no contract, there could be no breach thereof by either party.
Plaintiff is therefore entitled to the return of the deposit which he made with defendant, but he i.s entitled to no more.
It is therefore ordered that the judgment appealed from he reversed and it is now ordered that plaintiff, Scott J. Beinecke have judgment against defendant, William D. Bernhardt, for the full sum of four hundred and thirty dollars with legal interest from judicial demand until paid; and on the reconventional demand that there he judgment setting aside and annulling the agreement between the parties, hut in other respects rejecting the same. The costs of appeal to be paid by defendant, and those of the lower Court to he equally divided between the parties.
N. B. — Matter compromised, writ recalled.